**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leshae Ali, | No. CV-16-00420-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| USAA Federal Savings Bank, | |
| Defendant. | |

Pending before the Court is Plaintiff Leshae Ali's ("Plaintiff") Motion to Dismiss Defendant USAA Federal Savings Bank's ("Defendant") Counterclaim. (Doc. 18). Defendant filed an Opposition to the Motion to Dismiss, (Doc. 22), and Plaintiff filed a Reply in Support of Plaintiff's Motion to Dismiss, (Doc. 23). The Court now rules on the motion.

**I.    BACKGROUND[1]**

This action concerns Plaintiff's savings account opened with Defendant prior to December 2015. (Doc. 1 at 3; Doc. 15 at 2). On December 11, 2015, Plaintiff noticed a substantial deficit in her account and suspected that she was a victim of fraud. (Doc. 1 at 3). On the same day, Plaintiff called Defendant to report the suspected fraud and dispute the deficit in her account. (*Id.*)

---

[1] The Court recounts the factual background of this case as alleged by Plaintiff in her Complaint and Defendant in its Counterclaim. *See* (Docs. 1, 15).

1
2
3
4
5
6
7
8

With no response from Defendant, Plaintiff called Defendant again on January 14, 2016. (Doc. 1 at 3; Doc. 15 at 3). Plaintiff alleges that Defendant's representative advised her that the requisite steps were not taken to process the claim during the December 11th conversation. (Doc. 1 at 3). Plaintiff then asked Defendant's representative to investigate the deficit and provide an explanation. (Doc. 1 at 4). On January 28, 2016, Plaintiff received a notice dated January 21, 2016 stating that the investigation was complete, there were no fraudulent transactions, and Plaintiff could call to request copies of documents and information used to make the determination. (*Id.*)

9
10
11
12
13
14

On February 1, 2016, Plaintiff called Defendant to request the documents and information referenced in the letter. (*Id.*) Plaintiff alleges that Defendant's representative told Plaintiff that she was not likely entitled to receive any documentation and would follow up within forty-eight hours if she was in fact entitled to the information. (Doc. 1 at 4; Doc. 15 at 4). Plaintiff called Defendant two days later and Defendant's representative informed her that she was not entitled to receive any documentation. (Doc. 1 at 4).

15
16
17
18
19
20
21
22

In making this determination, Defendant alleges that "Plaintiff authorized a third party to deposit sums into, withdraw sums from, and/or otherwise access the Accounts by providing her account information and login credentials" to that third party. (Doc. 15 at 7). As a result, Defendant argues it owed Plaintiff no duty of disclosure under the Electronic Funds Transfer Act ("EFTA"). (*Id.*) Defendant further alleges that because the allegedly fraudulent withdrawals were authorized, Plaintiff's unpaid, overdrawn accounts constitute a breach of the Consumer Agreement signed by both parties upon initiation of the savings account. (Doc. 15 at 7–8).

23
24
25
26
27
28

Plaintiff filed her Complaint to recover damages under EFTA on February 15, 2016. (Doc. 1). Then, on April 6, 2016, Defendant filed an Amended Answer to Complaint and Counterclaim ("Counterclaim") alleging an Arizona state law breach of contract claim. (Doc. 15). In its Counterclaim, Defendant asserts supplemental jurisdiction arising out of the federal question jurisdiction asserted in the Complaint. (*Id.*)

On April 27, 2016, Plaintiff moved to dismiss the Counterclaim for lack of subject-matter jurisdiction. (Doc. 18).

## II. LEGAL STANDARDS

### A. Subject-Matter Jurisdiction

Federal Rule of Civil Procedure ("Rule") 12(b)(1) allows a party to move to dismiss a claim based on "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) subject-matter jurisdiction challenge may be raised at any time by the parties or the Court. Fed. R. Civ. P. 12(h)(3).

The Court is "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. In such circumstances, no presumptive truthfulness attaches to [a claimant's] allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (internal quotations and citations omitted). However, if the jurisdictional issue is dependent on the resolution of factual issues relating to the merits of the case, the Court applies the Rule 12(b)(6) standard to the Rule 12(b)(1) motion, and assumes that all of the allegations in the claim are true. *Id.* "Dismissal is then appropriate where it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (internal quotations omitted)).

### B. Supplemental Jurisdiction over Counterclaims

The Court has supplemental jurisdiction over a counterclaim if the counterclaim is so related to the complaint "that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (2012). Under Rule 13, a party must state compulsory counterclaims and may state permissive counterclaims in the party's initial pleading. Fed. R. Civ. P. 13(a)–(b). A compulsory counterclaim is a claim against the other party at the time of service that "arises out of the transaction or occurrence that is the subject matter of the

opposing party's claim," Fed. R. Civ. P. 13(a), while a permissive counterclaim is any counterclaim that is not compulsory. Fed. R. Civ. P. 13(b).

Although the Ninth Circuit has not expressly ruled on the applicability of the compulsory and permissive counterclaim framework to § 1367 supplemental jurisdiction claims, it has acknowledged a district court's supplemental jurisdiction over compulsory counterclaims. *See, e.g.*, *Gibson v. Chrysler Corp.*, 261 F.3d 927, 938 (9th Cir. 2001). Defendant asks the Court to expand the scope of supplemental jurisdiction past the existing scope of Rule 13 compulsory counterclaims and allow supplemental jurisdiction over some permissive counterclaims. *See* (Doc. 22 at 6–8); *see also Randall v. Nelson & Kennard*, No. CV-09-387-PHX-LOA, at \*4 (D. Ariz. Aug. 26, 2009) (quoting *Campos v. W. Dental Srvs., Inc.*, 404 F. Supp. 2d 1164, 1168 (N.D. Cal. 2005)) ("[T]he standard for supplemental jurisdiction is broader than the standard for a counterclaim to be compulsory."); *Avery v. First Resolution Mgmt. Corp.*, No 06-1812 HA, 2007 WL 1560653, at \*7–8 (D. Or. May 25, 2007), *aff'd*, 568 F.3d 1018 (9th Cir. 2009) (acknowledging that the supplemental jurisdiction "same case or controversy" test is broader than the compulsory counterclaim "same transaction or occurrence" test). *But see Hart v. Clayton-Parker & Assocs., Inc.*, 869 F. Supp. 774, 776 (D. Ariz. 1994) (equating the supplemental jurisdiction inquiry to the compulsory counterclaim inquiry). Accordingly, the Court recognizes the widened scope of § 1367 and adopts Defendant's argument that the Court can have supplemental jurisdiction over some permissive counterclaims.

Courts in the Ninth Circuit can determine whether the "claims arise out of the same transaction or occurrence" when "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all of the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (internal quotations omitted).

To determine whether two claims are "logically connected," courts should consider if "the facts necessary to prove the two claims substantially overlap," and

whether the "collateral estoppel effect of [] the first action would preclude the [claimant] from denying the truth of [the opposing party's] statements." *Id.* at 1251; *see also Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir. 1960) (parties that fail to plead a claim that arises out of the same transaction or occurrence as the opponent's claim will be "held to have waived [the counterclaim] and [are] precluded by res judicata from ever suing upon them again"). The Court can determine if the facts substantially overlap by comparing the facts alleged in the Complaint with the facts alleged in the Counterclaim. *See Easter Seals, Inc. v. Life, Inc.*, No. CV-09-1506-PHX-JAT, 2010 WL 892189, at *1–2 (D. Ariz. Mar. 10, 2010).

## III.   ANALYSIS

Plaintiff has moved to dismiss the Counterclaim for lack of subject-matter jurisdiction. The Complaint and Counterclaim both allege that Plaintiff is an account holder at Defendant's bank. (Doc. 1 at 3; Doc. 15 at 7). In addition, both parties allege that Plaintiff's account reflected a substantial deficit. (Doc. 1 at 3; Doc. 15 at 7–8). However, the cause of this deficit is in dispute. Plaintiff alleges that she is a victim of fraud. (Doc. 1 at 3). Plaintiff argues that her subsequent report of this fraud to Defendant triggered error resolution procedures under § 1693f(f)(6) and (7) of EFTA, regardless of whether Defendant found a legitimate error. (*Id.*; Doc. 32 at 3). Plaintiff further alleges that "Defendant did not comply with its duties after Plaintiff provided notice of her 'belief' that there was an 'error' regarding her account and after she requested documentation regarding Defendant's decision that there was no error." (Doc. 23 at 4).

Conversely, Defendant alleges that Plaintiff authorized a third party to make the electronic transfers. (Doc. 15 at 7–8). Defendant further alleges that because the transaction was authorized, the transaction falls outside the scope of an "error"[2] and

---

[2] To the extent that Defendant argues that the transaction falls outside the scope of "error," Defendant argues that "being defrauded by a third party and convinced to make transactions on the accounts, or giving the third party access to her accounts to conduct transactions, is not the same as an *unauthorized* electronic fund transfer, which is the subject of EFTA." (Doc. 22 at 5). The Court understands this argument to concern

Defendant is exempt from fulfilling its error resolution procedures under § 1693f(d). (Doc. 22 at 5). As a result, Defendant alleges that Plaintiff breached the Consumer Agreement by failing to pay for the negative balance. (*Id.*)

Under EFTA, a "financial institution" has a duty to investigate consumer-alleged "errors" in consumer accounts and notify the consumer of the results of such investigation. 15 U.S.C. § 1693f(a) (2012). EFTA defines seven instances of "error" that give rise to the error resolution procedures, including "a consumer's request for additional information concerning an electronic fund transfer or any documentation required by this subchapter," and "any other error described in regulations of the Bureau."[3] *Id.* § 1693f(f)(6)–(7).

A financial institution's duty under EFTA is triggered when a consumer: (1) notifies the bank of the account number and holder; (2) "indicates the consumer's belief that the documentation . . . contains an error and the amount of such error;" and (3) "sets forth the reasons for the consumer's belief." *Id.* § 1693f(a). Should a financial institution determine there was no error, "it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation." *Id.* § 1693f(d). In addition, if the consumer requests additional information, the financial institution must "promptly deliver or mail to the consumer reproductions of all documents which the financial intuition relied on to conclude that such error did not occur." *Id.*

---

"unauthorized transactions" as described by § 1693f(f)(1).

[3] "Error" also includes "an unauthorized electronic fund transfer." 15 U.S.C. § 1693f(f)(1) (2012). An "unauthorized electronic fund transfer" is defined as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." *Id.* § 1693a(12). The term does not include a transfer authorized by the account holder; a transfer "initiated with fraudulent intent by the consumer or any person acting in concert with the consumer"; or transfers that are considered "errors committed by a financial institution." *Id.* However, because Plaintiff's cause of action is limited to § 1693f(f)(6) and (7), (*see* Doc. 32 at 3), the Court will not address a cause of action under § 1693f(f)(1).

Plaintiff alleges she reported an error as defined by § 1693f(f)(6) and (7) when she requested additional information and documentation. (Doc. 32 at 3). As a result, the determination of whether the transactions were authorized by Plaintiff (as alleged in the Counterclaim) has no bearing on whether Defendant committed a procedural error under EFTA. Rather, Defendant's error can potentially exist under § 1693f(f)(6) and (7) simply because Plaintiff requested additional information and documentation and allegedly did not receive that documentation. Thus, the claims are distinct and do not rely on one another's outcome.

Moreover, the state contract Counterclaim would unnecessarily congest the EFTA claim at issue. Namely, Plaintiff's EFTA claim would involve very limited discovery and focus primarily on the communication between Plaintiff and Defendant, whereas the Counterclaim would involve significantly more discovery on separate issues including third party fraud and Plaintiff's account management. The facts that do overlap between the claims are limited to the parties involved and the existence of Plaintiff's account with Defendant. Further, because the sphere of discovery in each claim is distinct, should Defendant pursue its Counterclaim in state court, the findings made by that court would not risk judicial inconsistency. Thus, the respective discovery of the claims would not substantially overlap and there is little risk of collateral estoppel. The claims are not logically connected and accordingly are not part of the same transaction or occurrence. As a result, the claim is not compulsory.

Recognizing the widened scope of § 1367, a permissive Counterclaim could possibly have supplemental jurisdiction if the Counterclaim was still part of the same case or controversy as the Complaint. Under this widened scope, the Court can extend "supplemental jurisdiction beyond compulsory claims to encompass permissive claims that are so related to claims in the action within such original jurisdiction." *Avery*, No 06-1812 HA, 2007 WL 1560653, at *7–8 (D. Or. May 25, 2007), *aff'd*, 568 F.3d 1018 (9th Cir. 2009) (quoting *Campos*, 404 F. Supp. 2d at 1169) (internal quotations omitted). However, here, the claims are too disparate to be considered so related that they form part

of the same case or controversy. Plaintiff's claim is limited to Defendant's procedural error reporting duties under EFTA, while Defendant's claim focuses on whether Plaintiff breached her contract through an allegedly authorized third-party transaction. As explained above, the factual findings and related discovery are unlikely to overlap despite originating out of the same consumer account. Thus, the Court lacks supplemental jurisdiction because the Counterclaim is not compulsory and is not part of the same case or controversy as the Complaint.[4]

## IV.  CONCLUSION

Because the Court has found that the permissive Counterclaim does not arise out of the same case or controversy as the Complaint, supplemental jurisdiction does not exist.[5]

Accordingly,

/
/
/
/
/
/
/
/

---

[4] To the extent that the parties argue the Court should or should not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c), (Doc. 18 at 10–12; Doc. 22 at 9–10), these arguments are no longer relevant. Because the Counterclaim is permissive and does not arise out of the same case or controversy as the Complaint, supplemental jurisdiction does not exist under § 1367(a) and the discretionary inquiry under § 1367(c) is not applicable.

[5] In response to oral arguments held on September 14, 2016, the Court ordered Plaintiff to provide a more definite statement regarding her cause of action under 15 U.S.C. § 1693f(f). *See* (Doc. 31). In response, Plaintiff limited her pleading to a cause of action under 15 U.S.C. § 1693f(f)(6) and (7). (Doc. 32 at 3). If Plaintiff ever amends her pleadings to include a cause of action under 15 U.S.C. § 1693f(f)(1), Defendant will be permitted to plead its Counterclaim again (subject to any motion to dismiss Plaintiff might file).

**IT IS HEREBY ORDERED** that the Plaintiff's Motion to Dismiss the Counterclaim, (Doc. 18), is **GRANTED**; the Counterclaim (only) is dismissed, without prejudice, for lack of subject-matter jurisdiction.[6]

Dated this 28th day of September, 2016.

James A. Teilborg
Senior United States District Judge

---

[6] Because the Complaint will proceed, the Clerk of the Court shall not enter judgment at this time.